# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

VIRGIL C.H.,[1]

                        Plaintiff,

      vs.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                        Defendant.

Case No. 4:23-cv-00001-JMK

## <u>DECISION AND ORDER</u>

On or about November 26, 2018, Virgil C.H. ("Plaintiff") protectively filed applications under Titles II and XVI of the Social Security Act,[2] with an alleged onset date of October 31, 2016.[3] Plaintiff has exhausted his administrative remedies and filed a

---

[1] Plaintiff's name is partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time. Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income. Plaintiff brought claims under Titles II and XVI. Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs. *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI). For convenience, the Court cites the regulations governing disability determinations under both titles.

[3] Administrative Record ("A.R.") A.R. 348–63. The application summaries, not the applications themselves, appear in the Court's record. The DIB and SSI application summaries are both dated December 7, 2018. Pursuant to 20 C.F.R. §§ 416.340-350, a protective filing date establishes the earliest possible application date based on a claimant's oral inquiry about eligibility or a verbal or written statement of intent to file for benefits. Therefore, November 26, 2018, is considered Plaintiff's application filing date for both SSI and DIB. A.R. 348.

Complaint seeking relief from this Court.[4]  Plaintiff's Opening Brief asks the Court to reverse and remand the agency's decision for an immediate award of benefits, or in the alternative, for further administrative proceedings under Sentence Four of 42 U.S.C. § 405(g).[5]  The Commissioner filed the Administrative Record and a Response Brief.[6] Plaintiff filed a Reply Brief.[7]

Oral argument was not requested and was not necessary to the Court's decision. This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[8]

## I.  STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it either is not supported by substantial evidence or is based upon legal error.[9] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a

---

[4] Docket 1 (Plaintiff's Compl.).

[5] Docket 12 (Motion to Remand), Docket 13 (Plaintiff's Br.).

[6] Docket 9 (Notice of Lodging Admin. Record); Docket 15 (Commissioner's Br.).  As of December 1, 2022, the Commissioner's "answer may be limited to a certified copy of the administrative record."  *See* Fed. R. Civ. P., Supp. R. 4(b) of Soc. Sec. Actions under 42 U.S.C. § 405(g) (effective Dec. 1, 2022).

[7] Docket 16 (Reply).

[8] 42 U.S.C. § 405(g).

[9] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

Case No. 4:23-cv-00001-JMK, *Virgil C.H. v. Kijakazi*
Decision and Order
Page 2 of 28

conclusion."[10] Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[11] In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the administrative law judge ("ALJ")'s conclusion.[12] If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[13] A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which [s]he did not rely."[14] An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[15] Finally, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."[16] In particular, the Ninth Circuit has found that the ALJ's duty to develop the record increases when the

---

[10] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)).

[11] *Id.*; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

[12] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[13] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[14] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

[15] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotations and citations omitted).

[16] *Smolen v. Chater,* 80 F.3d 1273,1288 (9th Cir. 1996) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)); *superseded in part by statute on other grounds*, 20 C.F.R. § 416.929(c)(3). *See also Garcia v. Comm'r of Soc. Sec.,* 768 F.3d 925, 930 (9th Cir. 2014).

claimant is unrepresented or is mentally ill and thus unable to protect his own interests.[17] However, this duty exists "even when the claimant is represented by counsel."[18]

## II. DETERMINING DISABILITY

The Social Security Act ("the Act") provides for the payment of disability insurance benefits ("DIB") to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[19] In addition, Supplemental Security Income ("SSI") may be available to individuals who do not have insured status under the Act but who are age 65 or older, blind, or disabled.[20] Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[21]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in

---

[17] *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001).

[18] *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991) (quoting *Brown,* 713 F.2d at 443).

[19] 42 U.S.C. § 423(a).

[20] 42 U.S.C. § 1381a.

[21] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

significant numbers either in the region where such individual lives or in several regions of the country.[22]

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[23] A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[24] If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[25] The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[26] The steps, and the ALJ's findings in this case, are as follows:

**Step 1.** Determine whether the claimant is involved in "substantial gainful activity" ("SGA").[27] *The ALJ determined that Plaintiff had not engaged in SGA since October 31, 2016, the alleged onset date.[28]*

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work

---

[22] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

[23] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[24] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[25] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098 (emphasis in original).

[26] *Tackett*, 180 F.3d at 1101.

[27] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[28] A.R. 19.

experience. The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.[29]  *The ALJ determined that Plaintiff had the following severe impairments:  peripheral neuropathy secondary to diabetes mellitus; bilateral Morton's neuroma; and glaucoma.  The ALJ found that Plaintiff had the following non-severe impairments:  right knee/calf injury; high cholesterol and high blood pressure; and back pain.  The ALJ determined Plaintiff's depression was not a medically determinable impairment.*[30]

**Step 3.**  Determine whether the impairment or combination of impairments meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1, precluding substantial gainful activity.  If the impairment(s) is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled.  If not, the evaluation goes on to the fourth step.[31]  *The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.*[32]

Residual Functional Capacity.  Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed.[33]  Once determined, the RFC is used at both

---

[29] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[30] A.R. 19–20.

[31] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[32] A.R. 20.

[33] 20 C.F.R. § 416.945.

step four and step five. An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from his impairments, including impairments that are not severe.[34]  *The ALJ determined that Plaintiff had the residual functional capacity to perform light work with the following limitations:  he is limited to standing and walking for up to two hours and sitting up to six hours in an eight-hour workday, with normal breaks; frequent bilateral pushing and pulling; a sit/stand option every hour for five minutes to alleviate pain/discomfort, but without leaving the workstation; frequent climbing of ramps or stairs; never climbing ladders, ropes, or scaffolds; frequent balancing, stooping, kneeling, crouching, and crawling; avoiding moderate exposure to non-weather-related extreme cold, excessive noise, and excessive vibrations; and avoiding concentrated exposure to non-weather-related extreme heat and hazardous machinery.[35]*

**Step 4.**  Determine whether the claimant is capable of performing past relevant work.  At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC.  If the claimant can still do his past relevant work, the claimant is deemed not to be disabled.[36]  Otherwise, the evaluation process moves to the fifth and final step.[37]  *The ALJ determined that Plaintiff was capable of performing his past relevant work as a civil drafter (DOT*

---

[34] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[35] A.R. 20–21.

[36] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[37] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

*#005.281-010, sedentary, SVP 7) and repair order clerk (DOT #221.382-022, sedentary,*

*SVP 3), as the jobs are customarily performed.*[38]

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of his age, education, and work experience, and in light of the RFC. If so, the claimant is not disabled. If not, the claimant is considered disabled.[39] *The ALJ determined that Plaintiff was capable of performing his past relevant work and did not proceed to step five.*[40]

The ALJ concluded that Plaintiff was not disabled at any time from October 31, 2016, the alleged onset date, through December 20, 2021, the date of the decision.[41]

### III.  PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was 54 years old on October 31, 2016, the alleged disability onset date.[42] At that time, he was considered "closely approaching advanced age" (age 50–54) by the Social Security Administration.[43] On December 20, 2021, the date of the ALJ's decision, Plaintiff was 59 years old and considered a person of "advanced age" (age 55 or older).[44] Plaintiff met the insured status requirements for DIB benefits through December 31,

---

[38] A.R. 24.

[39] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[40] A.R. 24.

[41] A.R. 24–25.

[42] A.R. 351.

[43] *See* 20 C.F.R. §§ 404.1563, 416.963.

[44] A.R. 351.

2021.[45]  The ALJ found that Plaintiff had past relevant work as a civil drafter, repair order clerk, and automobile mechanic helper.[46]  From 1981 through 1985, Plaintiff served in the United States Army.[47]

Plaintiff's claim was denied initially on April 23, 2019.[48]  He appeared unrepresented and testified before ALJ Cecelia LaCara at a hearing on February 10, 2020.[49]  The ALJ issued an unfavorable hearing decision dated April 1, 2020.[50]  On February 10, 2021, the Appeals Council vacated the ALJ's decision and remanded for further proceedings.  The Council ordered the ALJ to:

> (1) Exhibit the appointment of representative and fee agreement documents and ensure that all relevant evidence and documents are clearly identified as part of the record;
>
> (2) Obtain additional evidence concerning Plaintiff's impairments to complete the administrative record;
>
> (3) Give further consideration to Plaintiff's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations; and
>
> (4) Obtain supplemental evidence from a vocational expert to determine whether Plaintiff has acquired any skills that are transferable to other occupations; ask hypothetical questions reflecting the specific capacity/limitations established by the records as a whole; ask the vocational expert to identify examples of appropriate jobs and the incidence

---

[45] A.R. 19.  In order to qualify for disability benefits under Title II, a claimant must have "insured status" and show his disability began on or before his date last insured.  42 U.S.C. §§ 423(a)(1), (c)(2), (d)(1)(A).

[46] A.R. 24.

[47] A.R. 49.

[48] A.R. 156–57.

[49] A.R. 74–129.

[50] A.R. 161–71.

of such jobs in the national economy; and before relying on the vocational expert evidence, identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and the Selected Characteristics of Occupations (SSR 00-4p).[51]

On August 12, 2021, Plaintiff again appeared and testified before ALJ LaCara. He was represented at the hearing.[52] On December 20, 2021, the ALJ issued a second unfavorable ruling.[53] After the Appeals Council denied review on November 15, 2022, Plaintiff timely appealed to this Court.[54]

## IV. DISCUSSION

Plaintiff is represented by counsel in this appeal. Plaintiff alleges the ALJ erred at step four of the sequential disability evaluation. Plaintiff asserts that the ALJ failed to develop the record because she did not order a consultative evaluation. Plaintiff also alleges the ALJ violated Social Security agency policy by taking testimony from medical experts before Plaintiff's testimony and failing to summarize his testimony for the experts.[55] The Commissioner disagrees and urges the Court to affirm.[56]

## A. The ALJ's Step Four Evaluation

At step four, a claimant must prove that he cannot perform his past relevant work, either as actually performed or as generally performed in the national economy. A

---

[51] A.R. 178–80.

[52] A.R. 32–73.

[53] A.R. 16–25.

[54] A.R. 1–6. Plaintiff filed his complaint on January 10, 2023. Docket 1.

[55] Docket 13 at 5–20.

[56] Docket 15 at 2–10.

claimant's testimony is the "primary source" for his work history and is "generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work."[57] However, a vocational expert's testimony "concerning the physical and mental demands of a claimant's past work, either as the claimant actually performed it or as generally performed in the national economy," can be "helpful in supplementing or evaluating the accuracy of the claimant's description of his past work."[58]

Here, the ALJ determined Plaintiff could perform his past relevant work as a civil drafter (DOT # 005.281-010, sedentary, SVP 7) and repair order clerk (DOT # 221.382-022, sedentary, SVP 3) "as the jobs are customarily performed." The ALJ found that Plaintiff also performed a composite job of repair order clerk and automobile mechanic helper (DOT #620.684-014, heavy, SVP 3).[59]

Plaintiff alleges the ALJ erred at step four. Specifically, Plaintiff asserts that his past work as a civil drafter was not performed long enough to qualify as past relevant work. He also alleges the ALJ erred by finding that he could perform his past relevant work as a civil drafter and repair order clerk as generally performed, because these jobs were "composite jobs."[60]

---

[57] S.S.R. 82-62, 1982 WL 31386 at *3 (Jan. 1, 1982). *See Holohan v. Massanari,* 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) ("SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference.") (citation omitted).

[58] 20 C.F.R. § 404.1560(b)(2).

[59] A.R. 24.

[60] Docket 13 at 5–11.

### 1. Duration of past relevant work

Pursuant to Social Security Regulation ("SSR") 82-62, "past relevant work" is "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it."[61] The duration requirement of SSR 82-62 states:

> Duration refers to the length of time during which the person gained job experience. It should have been sufficient for the worker to have learned the techniques, acquired information, and developed the facility needed for average performance in the job situation. The length of time this would take depends on the nature and complexity of the work.[62]

Plaintiff asserts that he did not work long enough as a civil drafter for the work to be classified as past relevant work.[63] The Commissioner contends that Plaintiff spent "a full year of college getting a 'one-year drafting certificate'" in addition to his "time on the job," thereby satisfying the duration requirement of SSR 82-62.[64]

Under the DOT, work as a civil drafter is sedentary as generally or customarily performed, with a significant vocational preparation ("SVP") rating of 7. A rating of SVP 7 requires "over 2 years up to and including 4 years" for a typical worker to learn the techniques, acquire the information, and develop the facility for average performance.[65]

---

[61] 20 C.F.R. § 404.1560(b)(1).

[62] S.S.R. 82-62, 1982 WL 31386, *2 (Jan. 1, 1982).

[63] Docket 13 at 6. *See* A.R. 367, 372, 384.

[64] Docket 15 at 4–6.

[65] DICTIONARY OF OCCUPATIONAL TITLES, Appx. C, at 1009 (4th ed. 1991).

In the ALJ's first decision issued on April 1, 2020, she determined that Plaintiff was unable to perform any of his past relevant work, including work as a "drafting apprentice." The ALJ relied on the vocational expert's "testimony indicating that the claimant did not work as a drafting apprentice for a long enough period of time to meet the SVP rating for this job."[66]

In the ALJ's second decision, issued December 20, 2021, the ALJ cited Plaintiff's earnings with Northland Surveying and Consulting in 2007 and a portion of 2008, Plaintiff's resume and work history reports, and the August 2021 testimony as evidence that Plaintiff met the requirements of SSR 82-62. The ALJ relied on the vocational expert's characterization of Plaintiff's past work to conclude Plaintiff could perform work as a civil drafter, as generally performed.[67]

Although a qualified vocational expert's testimony is considered "inherently reliable," this is "in the absence of any contrary evidence."[68] In this case, Plaintiff has identified contrary evidence. For example, Plaintiff's testimony indicates that he may not have performed his job as a civil drafter for a sufficient length of time to gain job experience. At his first hearing in February 2020, Plaintiff specifically testified that he "was a[n] entry [level] out-of-school draftsperson" with one class in computer aided drafting ("CAD"). He also testified that he worked as a drafter for Northland Surveying for "[s]ix or nine months." Plaintiff indicated that he then went back to the State of Alaska

---

[66] A.R. 169–70.

[67] A.R. 24.

[68] *Ford v. Saul,* 950 F.3d 1141, 1160 (9th Cir. 2020) (citing *Buck v. Berryhill,* 869 F.3d 1040, 1051 (9th Cir. 2017)).

vocational rehabilitation service to find different work because he "was not cutting it in the drafting field."[69] And, although Plaintiff testified at his second hearing in August 2021 that he obtained a certificate in drafting technology in 2006 and worked as a drafter in 2007 and 2008, Plaintiff's earnings from that time period do not reflect two years of full employment at Northland Surveying.[70]

Moreover, the vocational expert at Plaintiff's first hearing concluded that Plaintiff's work in civil drafting did not meet the duration requirement.[71] A different vocational expert testified at Plaintiff's August 2021 hearing, but he did not discuss the duration of Plaintiff's drafting work. Instead, the vocational expert noted Plaintiff's drafting certificate was "dated." He also cautioned that it would be "problematic" to conclude Plaintiff had transferable civil drafting skills without proof of continuing education or "enhancements" to his certificate.[72]

Plaintiff's resume, work history reports, and earnings regarding his work as a civil drafter are also ambiguous enough to have warranted clarification by the vocational expert or the ALJ.[73] And, although the Commissioner asserts that Plaintiff "spent more than two years learning to be a drafter and working as a drafter," the ALJ did not discuss

---

[69] A.R. 106–07.

[70] A.R. 43–44. Plaintiff's earnings from Northland Surveying & Consulting, LLC were approximately $24,280.00 in 2007 and $2,692.50 in 2008. A.R. 394.

[71] A.R. 120–21.

[72] A.R. 57–63.

[73] *See e.g.,* A.R. 394, 403, 434, 441–42.

how she calculated Plaintiff's time working as a civil drafter.[74]  The Court may not rely on "*post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."[75]

In sum, the ALJ erred by concluding that Plaintiff's past work as a civil drafter met the duration requirement of SSR 82-62 without further inquiry.  For the reasons set forth below, this error was not harmless.

### 2.    Past relevant work as generally or actually performed

A claimant's "[p]ast work experience must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in this work."[76]  To evaluate a claimant's past relevant work, the ALJ may use either the "actually performed test" or "generally performed test."  "[T]he 'generally performed test' is designed for situations where a claimant's past job was specially demanding when compared with industry standards."[77]

However, "[w]hen a job is a 'composite'—that is, it has significant elements of two or more occupations and therefore has no counterpart in the [Dictionary of Occupational Titles]—the ALJ considers only whether the claimant can perform the work as actually

---

[74] Docket 15 at 3–4; A.R. 24.

[75] *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1225 (9th Cir. 2009).

[76] *Id.  See also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1166–67 (9th Cir. 2008) ("Only if the ALJ finds that the claimant can no longer perform his past work, *as properly classified*, does the analysis move to the fifth and final step . . . .") (emphasis added).

[77] *Stacy v. Colvin,* 825 F.3d 563, 569 (9th Cir. 2016).

performed."[78]  If a claimant's past relevant work is not a composite job, the ALJ may consider the past work as it is customarily/generally performed or as actually performed.[79] Regardless, ALJ may not classify a composite job according to its "least demanding function" to conclude that a claimant can perform his past relevant work.[80]  In the Ninth Circuit, "the least demanding aspect" of a claimant's past job is a task that a claimant performs "less than half the time."[81]

Plaintiff alleges that the vocational expert should have categorized his past work as a civil drafter and repair order clerk as composite jobs and the ALJ should have evaluated his past work as he actually performed it.[82]  Specifically, Plaintiff asserts that his past work involved many tasks that were not included in the Dictionary of Occupational Titles ("DOT") job descriptions for civil drafter and repair order clerk.[83]

---

[78] *Barbara A. v. Saul,* Case No. 6:19-cv-01206-SB, 2020 WL 6820798, at * 3 (D. Or. Nov. 20, 2020) (citation omitted).

[79] *Pinto v. Massanari,* 249 F.3d 840, 845 (9th Cir. 2001) ("We have never required explicit findings at step four regarding a claimant's past relevant work both as generally performed *and* as actually performed.") (emphasis in original).

[80] *See Carmickle,* 533 F.3d at 1166 (20 percent of the claimant's duties as a construction supervisor involved supervision and the remaining 80 percent of his time was spent performing manual labor); *Vertigan v. Halter,* 260 F.3d 1044, 1051 (9th Cir. 2001) (the claimant's prior work as a cashier was only "a small part of her job."); *Valencia v. Heckler,* 751 F.2d 1082, 1086 (9th Cir. 1985) (holding that the ALJ erred by classifying the claimant's past work as a "tomato sorter," which was one part of her job and required only light exertion, because the claimant was actually an agricultural worker and performed work requiring medium exertion).

[81] *Stacy,* 825 F.3d at 569–70 (citing cases).

[82] Docket 13 at 7.  Plaintiff cites Programs Operation Manual System ("POMS") DI-25005.020 ("When comparing the claimant's RFC to a composite job as it was performed, find the claimant capable of performing the composite job only if he or she can perform all parts of the job.  A composite job will not have a DOT counterpart, so do not evaluate it at the part of step 4 considering work 'as generally performed in the national economy.'").

[83] Docket 13 at 10–11.

Case No. 4:23-cv-00001-JMK, *Virgil C.H. v. Kijakazi*
Decision and Order
Page 16 of 28

### (a)    Civil drafting job

The DOT describes the job of "civil drafter" as follows:

Drafts detailed construction drawings, topographical profiles, and related maps and specifications used in planning and construction of civil engineering projects, such as highways, river and harbor improvements, flood control, and drainage:   Reviews rough sketches, drawings, specifications, and other engineering data received from CIVIL ENGINEER (profess. & kin.) 005.061-014.  Plots maps and charts showing profiles and cross-sections, indicating relation of topographical contours and elevations to buildings, retaining walls, tunnels, overhead power lines, and other structures.  Drafts detailed drawings of structures and installations, such as roads, culverts, fresh water supply, sewage disposal systems, dikes, wharfs, and breakwaters.  Computes volume of tonnage of excavations and fills and prepares graphs and hauling diagrams used in earthmoving operations.  Performs other duties as described under DRAFTER (profess. & kin.) Master Title.  May accompany survey crew in field to locate grading markers or to collect data required for revision of construction drawings.  May specialize in drafting and modifying topographical maps from surveying notes and aerial photographs and be designated Drafter, Topographical (profess. & kin.).  May use computer-assisted drafting (CAD) equipment and software and be designated Drafter, Civil (CAD) (profess. & kin.).[84]

In this case, Plaintiff testified that he loaded survey equipment, walked through uneven terrain, and cut fire lines to find way points.  Plaintiff stated, "I was standing probably 90% of my day.  And when we would come back into the office, everything was done out in the field on the equipment, and then we would download it into our computer, [and] draft for a *few minutes* out of it."[85]  However, his work report indicated that he did not lift any weight during the work day and his resume entry for RCH Surveys in 2008 states that he "[w]ork[ed] well with [the] field crew."[86]

---

[84] *See* DOT #005.281-010, 1991 WL 646253 (Jan. 1, 2016).

[85] A.R. 44–45 (emphasis added).

[86] A.R. 439, 441.

Neither the vocational expert nor the ALJ considered Plaintiff's testimony that he spent most of his time out in the field and very little time actually drafting.[87] Moreover, the vocational expert at Plaintiff's previous hearing described Plaintiff's drafting work as a combination of "survey helper" and "drafter apprentice."[88] Because the time Plaintiff spent doing "field work" was so significant, it was err for the ALJ not to consider it.

### (b) Repair order clerk job

Plaintiff asserts that his work at several large trucking companies was inadequately classified as a repair order clerk.[89] He alleges that the work he performed at three trucking companies between 2008 and 2016 "involved the performance of significant tasks that are not even mentioned in the DOT code for this position."[90]

The duties of the repair order clerk job are described in the DOT as follows:

> Receives interdepartmental work orders for construction or repairs, routes work orders to maintenance shop, and compiles cost reports: Files copy of each work order received, and routes original copy to maintenance shop. Receives and files cost reports of work accomplished, and prepares bills to be charged against department requesting construction or repairs. Types cost reports of work completed or in progress.[91]

At Plaintiff's August 2021 hearing, the vocational expert testified that Plaintiff actually performed the repair order clerk job at a light level with two employers. He testified that Plaintiff's work with a third trucking company was a composite job, including

---

[87] A.R. 43–45, 57–58.

[88] A.R. 116.

[89] Docket 13 at 8–10.

[90] Docket 13 at 8–9.

[91] DICOT 221.382-022, 1991 WL 672030.

work as a repair order clerk and work as an automobile mechanic helper (DOT # 620.684-014, heavy, SVP 3).[92]

The Commissioner asserts that the Ninth Circuit considered the issue of a claimant's actual work diverging from work as generally performed in the national economy and contends that "although the actual duties of Plaintiff's past jobs were beyond his abilities, he could nevertheless perform the less onerous demands of those jobs as generally expected in the national economy."[93]

However, unlike *Stacy v. Colvin,*[94] it is unclear whether Plaintiff spent most of his time as a repair clerk performing the "least demanding" functions of the job or whether his duties primarily involved more onerous duties as part of a composite job.[95] Consequently, the Court cannot determine if the ALJ categorized Plaintiff's past work as a repair clerk according to its least demanding function or if she correctly applied the "generally performed" test.

In sum, the ALJ erred at step four of the sequential disability evaluation. On remand, the ALJ should obtain detailed testimony from Plaintiff regarding his past relevant

---

[92] A.R. 60–61.

[93] Docket 15 at 5 (citing *Stacy,* 825 F.3d at 569).

[94] The Ninth Circuit held that because Stacy was "engaged in supervisory duties 70-75 percent of the time," the ALJ "did not categorize Stacy's past work according to its least demanding function but instead correctly applied the 'generally performed' test." *Stacy,* 825 F.3d at 570.

[95] A.R. 24, 58–61.

Case No. 4:23-cv-00001-JMK, *Virgil C.H. v. Kijakazi*
Decision and Order
Page 19 of 28

work, obtain testimony from a vocational expert, reevaluate Plaintiff's past relevant work, and determine whether Plaintiff can perform it.[96]

## B.    The ALJ's Development of the Record

Plaintiff asserts that the medical record is incomplete due to his inability to afford medical treatment for his physical impairments after October 2018.  He alleges that the ALJ failed to develop the record because the ALJ had a duty to obtain a consultative examination.[97]  The Commissioner counters that "the record [is] sufficient:  the ALJ had two medical experts who reviewed the medical record and testified at the 2020 administrative hearing about the nature and severity of Plaintiff's physical and mental impairments."  The Commissioner also asserts that the ALJ found the medical expert testimony and State Agency consultant opinions "persuasive for reasons that Plaintiff does not challenge."[98]

Although social security claimants bear the burden of establishing their disabilities,[99] ALJs have a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."[100]  An ALJ's duty to develop the record is triggered "when there is ambiguous evidence or when the record is inadequate to allow

---

[96] In a footnote, Plaintiff also alleges the ALJ failed to resolve the conflict between the vocational experts' testimony at his February 2020 and August 2021 hearings.  Docket 13 at 9, n. 2.  Because the ALJ must reevaluate Plaintiff's relevant past work at step four, the Court does not specifically address this argument.

[97] Docket 13 at 12.

[98] Docket 15 at 6–8.

[99] 20 C.F.R. §§ 404.1512(a)(1) & 416.912(a)(1).

[100] *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).

for proper evaluation of the evidence."[101]  This duty is "heightened" when a claimant is not represented by counsel when appearing before the agency.[102]

"One of the means available to an ALJ to supplement an inadequate medical record is to order a consultative examination."[103]  At the same time, "[t]he government is not required to bear the expense of an examination for every claimant."[104]  An ALJ can also develop the record fully and fairly by "subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record."[105]  However, the Ninth Circuit has held that certain cases "normally require a consultative examination."[106]  Specifically, those cases "in which additional evidence needed is not contained in the records of [the claimant's] medical sources, and those involving an ambiguity or insufficiency in the evidence [that] must be resolved."[107]

At the August 2021 hearing, the ALJ noted Plaintiff's pre-hearing requests for a consultative examination.  She stated, "[l]ooking at [Plaintiff's] alleged impairments, I believe it would be best to do an in-person consultative exam."  She also explained that

---

[101] *Mayes v. Massanari,* 276 F.3d 453, 459–60 (9th Cir. 2001) (citing *Tonapetyan,* 242 F.3d at 1150).

[102] *Celaya,* 332 F.3d at 1183 (citing *Higbee v. Sullivan,* 975 F.2d 558, 561 (9th Cir. 1992).

[103] *Reed v. Massanari,* 270 F.3d 838, 841 (9th Cir. 2001) (citing 20 C.F.R. §§ 404.1519, 416.919).

[104] *Id.* at 842.

[105] *Tonapetyan,* 242 F.3d at 1150.

[106] *Reed,* 270 F.3d at 842.

[107] *Id.*

scheduling delays and the pandemic had complicated the consultative examination process at that time.[108] Plaintiff's representative explained that a consultative examination was necessary in Plaintiff's case in order to "have updated information and assessment of his symptoms and his conditions in the light of the fact that he is without medical insurance."[109] The ALJ then stated she would take the consultative examination under consideration and the hearing proceeded.[110] Plaintiff testified that he had not seen a doctor since 2019.[111] Plaintiff also described symptoms such as involuntary movements in his calves; "electrical pain and sensations throughout [his] body," including his feet; hot flashes and night sweats; sensitivity to touch and temperature; fatigue; and continually adjusting due to pain.[112]

In the December 2021 unfavorable decision, the ALJ denied Plaintiff's request for a consultative examination, concluding that the evidence in the record was sufficient. Specifically, the ALJ noted certain post-hearing evidence obviated the need for a consultative examination.[113] This evidence included lab results from Fairbanks Memorial Hospital on December 11, 2018, eye examinations from June and December 2019, and

---

[108] A.R. 36–37.

[109] A.R. 37–38.

[110] A.R. 40.

[111] A.R. 39–40.

[112] A.R. 50–52.

[113] A.R. 16.

a response from Tanana Valley Clinic notifying the Social Security Administration that the clinic had no records for Plaintiff on or after May 3, 2019.[114]

Although an ALJ may discharge her duty to develop the evidence by allowing for supplementation of the record, the medical records submitted after Plaintiff's August 2021 hearing are insufficient.[115] While the post-hearing evidence shows that Plaintiff's glaucoma had not negatively affected his visual acuity as of December 2019,[116] it primarily shows that Plaintiff did not seek medical care for his other severe impairments after May 2019.[117] A claimant's inability to afford insurance and treatment is considered "evidence of a good reason for not taking medication for [his] symptoms" and "[his] symptom testimony cannot be rejected for not doing so."[118] Here, in the context of Plaintiff's inability to access care without medical insurance, the ALJ failed to "conduct an appropriate inquiry" by merely supplementing the record.[119]

Plaintiff's gap in medical care, coupled with his testimony that his symptoms had significantly worsened, triggered the ALJ's duty to develop the record. However, in this case, the ALJ did not fulfill the duty by supplementation of the record. The three additional

---

[114] A.R. 872–88.

[115] *Tonapetyan,* 242 F.3d at 1150.

[116] A.R. 22, 874–84.

[117] A.R. 872–888.

[118] *Glanden v. Kijakazi,* __ F.4th __, 2023 WL 7860717, at *7 (9th Cir. Nov. 16, 2023) (citing *Smolen,* 80 F.3d at 1284).

[119] *Tonapetyan,* 242 F.3d at 1150.

medical records were mostly unrelated to the symptoms Plaintiff described in his testimony.[120]

On remand, the ALJ should be instructed to obtain a consultative examination or a medical source opinion from an appropriate expert addressing Plaintiff's alleged worsening impairments and the gap in records due to his inability to afford medical insurance and treatment.

## C.    Medical Experts' Testimony and HALLEX I-2-6-70(b)

Plaintiff contends that the ALJ failed to comply with section I-2-6-70(b) of the Social Security's internal policy manual known as Hearing, Appeals, and Litigation Law Manual ("HALLEX").  Plaintiff relies on two decisions by this Court,[121] the promulgation of Social Security Ruling ("SSR") 13-2p,[122] and Remand Orders from the Appeals Council (AC) in cases involving other applicants.[123]

At Plaintiff's first hearing, two medical experts[124] testified prior to any testimony from Plaintiff, and the ALJ did not provide the medical experts with a summary of Plaintiff's testimony.  The Social Security Administration's HALLEX I-2-6-70(b) provides:

---

[120] A.R. 50–52, 872–888.

[121] *Steele v. Saul,* 520 F. Supp. 3d 1198 (D. Alaska Feb. 19, 2021); *Quick v. Saul,* 520 F. Supp. 3d 1190 (D. Alaska Feb. 19, 2021).

[122] SSR 13-2p, 2013 WL 603764, provides, in pertinent part, that "[w]e require adjudicators at all levels of administrative review to follow agency policy, as set out in the Commissioner's regulations, SSRs, Social Security Acquiescence Rulings (ARs), and other instructions, such as the Program Operations Manual System (POMS), Emergency Messages, and the Hearings, Appeals and Litigation Law manual (HALLEX)."

[123] Docket 13 at 16–17, Docket 13-2 at 1–9.

[124] The two medical experts were Stephen Anderson, M.D. and Colette Valette, Ph.D.  Plaintiff notes that the SSA "elicited testimony from Dr. Valette despite her termination from the Panel of

The ME may attend the entire hearing, but this is not required.

> If the ME was not present to hear pertinent testimony, such as testimony regarding the claimant's current medications or sources and types of treatment, the ALJ will summarize the testimony for the ME on the record.[125]

SSR 13-2p is a policy clarifying how the SSA determines "whether 'drug addiction and alcoholism' (DAA) is material to [SSA's] determination of disability."[126]  The policy provides, in pertinent part:

> We require adjudicators at all levels of administrative review to follow agency policy, as set out in the Commissioner's regulations, SSRs, Social Security Acquiescence Rulings (ARS), and other instructions, such as the Program Operations Manual System (POMS), Emergency Messages, and the Hearings, Appeals and Litigation Law manual (HALLEX).[127]

As other district courts in the Ninth Circuit have held, SSR 13-2p is not binding here because Plaintiff is not claiming the ALJ improperly applied the drug and alcohol dependence factors.[128]  Moreover, even after the promulgation of SSR 13-2p, the Ninth

---

Consultative Examiners due to sanctions filed against her by the California Department of Consumer Affairs Board of Psychology."  Plaintiff attached a copy of the termination letter, but he does not make a specific argument regarding Dr. Valette.  *See* Docket 13 at 15 n.3, Docket 13-1 at 1–11.  Consequently, the Court does not address this commentary by Plaintiff.

[125] HALLEX I-2-6-70(b) (S.S.A.), 1993 WL 751901.

[126] SSR 13-2p, 2013 WL 603764 [PURPOSE].

[127] SSR 13-2p, 2013 WL 603764, at *11946.

[128] *See, e.g., Montoya v. Kijakazi,* Case No. 1:20-cv-0152-JLT, 2021 WL 5356470, at *6–7 (E.D. Cal. Nov. 21, 2021) ("Plaintiff does not identify any evidence in the record supporting a conclusion that these provisions are applicable for her claim."); *Kathleen v. Saul,* Civ. No. 3:19-cv-00651-JLS-RNB, 2020 WL 353602, at *7 (S.D. Cal. Jan. 21, 2020) ("As Plaintiff does not claim the ALJ improperly applied the Plaintiff's drug or alcohol dependence in his disability determination, SSR 13-2p is not binding.") (citing *Martinez v. Colvin,* Civ. No. 6:14-cv-01703-MC, 2016 WL 270911, at *5 (D. Or. Jan. 20, 2016)) ("Plaintiff made no claims that there were misinterpretations of policies relating to drug addiction and alcoholism in this case. Therefore, SSR 13-2P is inapplicable here and does not change this Court's application of *Lockwood.*"); *Hollen v. Comm'r of Soc. Sec,* 2017 WL 1075194, at *8-*9 (S.D. Cal. Mar. 22, 2017) ("[A]s SSR 13-2P does not

Circuit has continued to hold that the SSA's internal policy manuals such as the HALLEX do not give rise to judicially enforceable duties."[129]  While Plaintiff is correct that the ALJ violated HALLEX, allegations of non-compliance with the HALLEX are not enforceable by the district court.[130]

In support of his position, Plaintiff points to two Alaska District Court decisions, *Steele v. Saul* and *Quick v. Saul*.[131]  While the Court in both *Steele* and *Quick* found the ALJ erred by allowing the medical experts to testify before the claimant, both cases were remanded for multiple reasons and neither explicitly dealt with whether HALLEX imposes judicially enforceable duties or whether Plaintiff's reliance on SSR 13-2p was misplaced.[132]  Further, in subsequent cases, the Court explained, "[b]ased on the

---

mandate the ALJ follow HALLEX procedures, the ALJ did not err by refusing to summarize Plaintiff's subjective testimony for the ME.").

[129] *See e.g., Wilson v. Berryhill,* 732 F. App'x 504, 507 (9th Cir. 2018); *Withrow v. Colvin,* 672 F. App'x 748, 749 (9th Cir. 2016); *Durden v. Colvin,* 546 F. App'x 690, 690–91 (9th Cir. 2013).  A court or litigant may cite to unpublished Ninth Circuit opinions issued on or after January 1, 2007. U.S. Ct. App. 9th Cir. R. 36-3(b); Fed. R. App. P. 32.1(a).

[130] *See Roberts v. Comm'r of Soc. Sec. Admin.,* 644 F.3d 931, 933 (9th Cir. 2011) ("HALLEX . . . does not carry the force of law and is not binding upon the agency.  Therefore, we do not review allegations of non-compliance with its provisions.") (internal quotations and citations omitted); *Lockwood v. Comm'r Soc. Sec.,* 616 F.3d 1068, 1072 (9th Cir. 2010) ("HALLEX does not impose judicially enforceable duties on either the ALJ or this court.") (internal citations omitted).

[131] 520 F. Supp. 3d 1198 (D. Alaska Feb. 19, 2021); 520 F. Supp. 3d 1190 (D. Alaska Feb. 19, 2021).

[132] *Steele,* 520 F. Supp. 3d 1198 (remanding because substantial evidence did not support the classification of claimant's past relevant work and this error was not harmless; ALJ's reasons for rejecting opinion of doctors who opined that claimant was impaired were not supported by substantial evidence; and further development of record was necessary); *Quick,* 520 F. Supp. 3d at 1195-96 (remanding because neither of the two testifying medical experts was qualified to opine about development of a specific condition; one of the experts should not have even been permitted to testify as a medical expert because her medical license was revoked prior to the hearing and she was terminated from the Panel of Consultative Examiners; and there was evidence to support a mental health condition the ALJ did not consider an impairment).

Case No. 4:23-cv-00001-JMK, *Virgil C.H. v. Kijakazi*
Decision and Order
Page 26 of 28

arguments defendant has raised in [these cases], arguments that were not raised in *Steele* or *Quick*, the court must conclude that the ALJ was not required to comply with HALLEX 1-2-6-70(b)."[133]

In this case, the ALJ's failure to elicit Plaintiff's testimony prior to the medical experts and failure to provide the experts with a summary of the testimony is not reversible error.

### D.    Scope of Remand

Plaintiff requests that the Court reverse the SSA's final decision and remand for an award of benefits or for further proceedings under Sentence Four of 42 U.S.C. § 405(g).[134] The "ordinary remand rule" applies to disability cases.   When prejudicial error has occurred, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[135]   For the above reasons, the proper remedy is to remand for further administrative proceedings and the issuance of a new decision with appropriate findings at each step of the sequential evaluation.

## V.   ORDER

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are not free from legal error and not supported by substantial evidence.   Accordingly, IT IS ORDERED that Plaintiff's request for relief at Docket 12 is GRANTED and the Commissioner's final decision is VACATED and REMANDED for

---

[133] *Chad M. v. Kijakazi,* Case No. 3:21-cv-00268-TMB, 2022 WL 2914721, at *6 (D. Alaska July 25, 2022) (collecting cases).

[134] Docket 13 at 21.

[135] *Dominguez v. Colvin,* 808 F.3d 403, 407 (9th Cir. 2015) (quoting *Treichler,* 775 F.3d at 1099).

further proceedings consistent with this Decision and Order.  Upon remand, the ALJ should be instructed to:

1.      Obtain a consultative examination or a medical source opinion from an appropriate expert addressing Plaintiff's alleged worsening impairments and the gap in records due to his inability to afford medical insurance and treatment; and

2.      Obtain evidence from Plaintiff and a vocational expert regarding Plaintiff's past work, reevaluate Plaintiff's past relevant work, and determine whether Plaintiff can perform it.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 18th day of December, 2023, at Anchorage, Alaska.

*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
UNITED STATES DISTRICT JUDGE